NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251293-U

NO. 4-25-1293

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 20, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| (Bryon Allen Johnston, | ) | Circuit Court of |
|      Petitioner-Appellee, | ) | Rock Island County |
|      v. | ) | No. 24DN132 |
| Shavonna G. Jovan-Johnston, | ) | |
|      Respondent-Appellant). | ) | Honorable |
| | ) | Kathleen Ellen Mesich, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Vancil and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, finding the trial court did not abuse its discretion when dividing marital property equally.

¶ 2     Respondent, Shavonna G. Jovan-Johnston (Shavonna), appeals the trial court's equal division of specific marital property as part of a dissolution of marriage with her husband, petitioner, Bryon Allen Johnston (Bryon). On appeal, Shavonna argues (1) the relevant factors supported a 65/35 division of marital property in her favor, (2) the court failed to meaningfully consider the relevant factors, and (3) the court's equal division disproportionately favored Bryon. We disagree and affirm.

¶ 3                           I. BACKGROUND

¶ 4     The parties were married in August 2005. Bryon filed a petition for dissolution of marriage in August 2024. No children were born of the marriage, so the only issues were the

payment of maintenance and the division of property. The matter proceeded to an evidentiary hearing in September 2025. Prior to the hearing, the parties had filed a joint pre-trial memorandum which narrowed the contested issues to (1) the division of certain property and debts, (2) the allocation of Bryon's retirement savings, (3) the allocation of the proceeds from the sale of their home, (4) maintenance, and (5) Shavonna's future health insurance coverage.

¶ 5        At the hearing, Bryon testified he was agreeable to pay maintenance in the amount of $2,073.29 per month for 172.5 months. He proposed dividing his 401(k) retirement plan and his current pension equally. He stated Shavonna had quit working in 2012 because she "didn't get along with her coworkers." He acknowledged she received Social Security Disability Income (SSDI) due to her multiple sclerosis. He believed Shavonna would be eligible for Medicare. Lastly, he offered to pay her continued health insurance under the Consolidated Omnibus Budget Reconciliation Act of 1985 (29 U.S.C. § 1161 *et seq.* (2024)) through the end of the year.

¶ 6        On cross-examination, Bryon agreed his monthly gross income was approximately $8,900 with a net income of approximately $7,200. He also agreed there was approximately $17,000 in a savings account.

¶ 7        Shavonna testified as an adverse party pursuant to section 2-1102 of the Code of Civil Procedure (735 ILCS 5/2-1102) (West 2024)). She was aware she was eligible for Medicare and had inquired about applying. She said she was permitted to earn up to $2,500 per month without affecting her SSDI payments. She stated she had applied for various jobs but was never hired.

¶ 8        Shavonna then testified on her own behalf and stated she was diagnosed with multiple sclerosis in 2001. She said her condition had gotten worse over the last year. Her

testimony noted numerous issues affecting her ability to sustain various activities for long periods of time, which, in turn, affected her ability to work. She said she had a GED.

¶ 9 Following testimony, Bryon argued the marital property should be divided equally. Shavonna argued for a "65/35" division of the house proceeds and other disputed assets.

¶ 10 Following evidence and arguments from the parties, the trial court stated:

"This is an 18-year marriage. It should be split down the middle 50/50.

I do not see how or why [Shavonna] could not do something for some sort of income. Do something with the humane society, maybe; get a job watching someone's animals; get a job as a greeter at Walmart. I don't know.

But I—I have a real problem listening to someone say that they absolutely cannot work, period. I don't think that that is the case."

¶ 11 The trial court subsequently ordered the marital assets be distributed as follows: the parties were to split equally the equity of their home, a bank account containing $17,000, and Bryon's retirement accounts. Additionally, the court awarded Shavonna $2,073.29 per month for 172.5 months in maintenance.

¶ 12 This appeal followed.

¶ 13 II. ANALYSIS

¶ 14 On appeal, Shavonna argues the trial court abused its discretion when it divided the marital property equally rather than in just proportions pursuant to section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(d) (West 2024)).

¶ 15 The Act states marital property shall be divided in "just proportions" and provides a list of relevant factors for the trial court to consider. *Id.* We review a trial court's distribution of marital property for an abuse of discretion. *In re Marriage of DeRossett*, 173 Ill. 2d 416, 422 (1996). "In determining whether the trial court abused its discretion in dividing marital property, this court will not substitute its judgment for that of the trial court unless no reasonable person would adopt the position of the trial court." *In re Marriage of Oden*, 394 Ill. App. 3d 392, 397 (2009).

¶ 16 Shavonna argues the section 503(d) factors weighed against equal division of marital assets. Specifically, she argues the evidence showed a stark inequality between Bryon's net monthly income of $7,284.58 and her sole income from SSDI of $463. She also notes the evidence showed her worsening health and long absence from the workforce demonstrated she had a diminished opportunity for future employment and income.

¶ 17 She also contends the trial court failed to make a case-specific analysis pursuant to section 503(d). She claims the court's reference to the length of the marriage and defaulting to equal distribution of assets failed to show the court's meaningful engagement with the statutory factors. She claims the court's decision discounted her disability, extended workforce absence, negligible income, substantial expenses, and diminished prospects for future earnings.

¶ 18 Finally, she argues the equal division of marital property disproportionately favored Bryon. She, again, points to the disparity between her income and Bryon's in light of his ability to continue building his earning and retirement savings.

¶ 19 Regarding Shavonna's first argument that the section 503(d) factors weighed against an equal (50/50) division of marital property, we disagree. She references section 503(d) of the Act, which enumerates 12 relevant factors. However, on appeal, she only mentions two:

"the duration of the marriage" and "the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties." 750 ILCS 5/503(d)(4), (8) (West 2024). These factors were not only considered but explicitly mentioned by the trial court. The court did not believe Shavonna was incapable of performing work. A reviewing court affords great deference to the trial court's superior position to assess the credibility of witnesses. See *In re Marriage of Lonvick*, 2013 IL App (2d) 120865, ¶ 33 (stating the trial court is afforded great deference because of its superior position to judge the credibility of witnesses for determining the best interest of the child for child custody).

¶ 20        Shavonna's second argument contends the trial court failed to meaningfully engage with the relevant factors from section 503(d) and, in fact, discounted her disability, which, she argues, weighs in her favor. We note the relevant factors are not required to be "given equal weight, so long as the balance struck by the court is reasonable under the circumstances." *In re Marriage of Miller*, 231 Ill. App. 3d 480, 487 (1992). Shavonna's contention appears to suggest one factor be given substantially more weight. We find the court appropriately considered her disability and potential for future earnings. The record does not reveal the court failed to consider all of the relevant factors. "While a trial court must consider all relevant factors before exercising its discretion in distributing marital property, it need not make specific findings as to each of the factors set forth in section 503(d)." *In re Marriage of Benz*, 165 Ill. App. 3d 273, 288 (1988).

¶ 21        Lastly, Shavonna argues the trial court's equal distribution disproportionately favored Bryon due to the disparity in his monthly income and her poor prospects for future earnings. The court was required to balance the relevant factors and divide the marital property in just proportions. We have already found the court did so. The fact that Bryon's earnings after

the marriage are significantly more than Shavonna's does not change the findings. Indeed, had the court divided the marital property as Shavonna requested, Bryon's post-marriage earnings would still be significantly more than hers. Therefore, we find the trial court's division of marital property was not an abuse of discretion.

¶ 22                                   III. CONCLUSION

¶ 23            For the reasons stated, we affirm the trial court's judgment.

¶ 24            Affirmed.